IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 07-136ML |
| | ) | |
| CHARLIE VU | ) | |

GOVERNMENT'S OBJECTION
TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Mary Rogers, Assistant United States Attorney, and objects to Defendant's Motion to Suppress Evidence for reasons stated in the accompanying Memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY ROGERS
MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

CERTIFICATION OF SERVICE

On this 28th day of February, 2008, I caused the Government's Objection to the Defendant's Motion to Suppress Evidence and Memorandum in Support of said Objection to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Walter H. Underhill, Esq.
66 Long wharf, 4th Floor
Boston, MA 02110

William C. Dimitri, Esq.
462 Broadway
Providence, RI 02909

/s/ MARY ROGERS

MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 07-136ML |
| | ) | |
| CHARLIE VU | ) | |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant Charlie Vu moves to suppress evidence obtained as the result of his encounters with law enforcement on May 11, 2007.[1] The Defendant was legally stopped pursuant to the dictates of Terry v. Ohio. At the time of the stop there was articulable suspicion supporting the stop. That suspicion developed into probable cause. The search of the vehicle was done pursuant to a consent to search, but would have been lawful without a consent because probable cause existed at the time the search took place.

The Defendant further claims that "the Government has yet to disclose complete discovery" and proceeds to list matters beyond the scope of discovery under the Federal Rules and case law. The government also notes the Defendant's footnote in which his attorney state that their "recitation of facts has been drawn from such discovery as has been made available thus far – to the Defendant. Defendant's Counsel believes, however, that not all the facts are

[1] The Defendant also made statements while at his home in New Jersey to members of law enforcement on July 30, 2007. Copies of these statements were previously provided to the Defendant in discovery. The Defendant has not addressed these admissions in his motion or memorandum of law and therefore the government assumes that the admission of these statements is not being contested by the Defendant.

known to him. Therefore, he reserves the right to supplement his case with further pleading and discovery requests, including a supplement to this Motion and Memorandum." To the extent that the Defendant's attorney meant to imply that the government has not complied with its obligations pursuant to the Federal Rules and case law, the government objects. All material to which the Defendant is entitled pursuant to Rule 16 of the discovery rules has been provided. Defendant's statement, that Jencks material is "discovery" material, is erroneous. As to whether the Court wishes to allow supplemental memorandum, that is at the Court's discretion, not a right that the Defendant is entitled to reserve.

## I. FACTS

On May of 2007, the Providence Department of Immigration and Customs Enforcement (ICE) received information from the ICE Buffalo and ICE Newark that Charlie Vu, an Asian male, was involved in transporting narcotics proceeds in the New England area. On May 11, 2007, ICE Newark, through ICE New Haven, provided additional, specific information that a Nissan Pathfinder, bearing New Jersey registration UCB95N, occupied by an Asian male, was traveling toward New England. ICE had information that the male intended to pick up cash that was derived from drug trafficking. New Haven ICE followed Vu through Connecticut into Rhode Island on route 95. Providence ICE joined surveillance of Vu after he traveled into Rhode Island. ICE observed Vu drive to a parking lot in South Kingstown. Vu went inside a store, came out, and then spoke on a cell phone. Vu then drove to a restaurant parking lot, also located in South Kingston. Vu was observed meeting with an Asian male who had just parked a small, black commercial dump truck with the words, "STAR LANDSCAPING" on its side (the vehicle was registered to a Ly Chau of Randolph, Massachusetts). The two men walked into the

restaurant. Approximately 25 minutes later they were seen leaving the restaurant. The two men walked over to the dump truck, where the unknown Asian male opened the side door of his truck and retrieved a blue duffel bag, with an item of clothing draped over it. The unknown male handed the bag to Vu. Vu opened the rear cargo door of his Pathfinder and placed the blue duffel bag inside. The two men left the parking lot, driving off in opposite directions.

ICE continued to surveill Vu as he headed down Route 108 toward the interchange with I-95. ICE requested assistance from the Rhode Island State Police. The Rhode Island State Police stopped Vu approximately 25 minutes later near the Richmond elementary school. As the uniformed trooper approached Vu's vehicle from the rear, the trooper noticed a blue bag that matched the description of the bag that had just been transferred from the unknown Asian male to Vu in the restaurant parking lot in South Kingston in the back of the Nissan Pathfinder. The Trooper asked Vu for his license and registration. The trooper asked Vu where he was traveling. Vu told the Trooper that Vu had just visited his son at the University of Rhode Island campus and that he was now driving back to New Jersey. From surveillance, members of law enforcement knew that Vu had come from New Jersey, through Connecticut, and had not stopped on May 11, 2007 at any location affiliated with the University of Rhode Island. The trooper asked if there was anything in the vehicle that he should know about and Vu stated there was not. The trooper asked whether Vu would allow the trooper to look inside Vu's vehicle. Vu replied that it would not be a problem and agreed to let the trooper look. The trooper asked Vu whether the blue duffel bag was his. Vu denied any knowledge of the bag. The trooper looked inside the duffel bag and noted a very large quantity of cash divided into five bundles of money. Each bundle was wrapped in tan plastic shopping bags and shrink wrapped covering (the total amount

was later determined to be $220,270 in cash). Vu claimed that he had no knowledge of the blue duffel bag or of the cash inside and also claimed that he was unaware of how the bag or the money came to be located in his vehicle. He verbally abandoned ownership of the bag and its contents to the State Police. Vu was then handcuffed and taken to the Hope Valley State Police barracks. At the barracks the handcuffs were removed. The vehicle was towed to the barracks. At the barracks the money was counted. A canine, certified to detect controlled substances, including marijuana, cocaine, and heroin, alerted to the presence of drugs on the blue duffel bag. No visible drugs were located.

Members of the Providence ICE spoke with Vu at the Hope Valley barracks. The two agents were dressed in civilian clothing. Neither displayed any type of weapon. At the beginning of their conversation with Vu, he was told that he was not under arrest and that he was free to leave the premises or end the interview if and when he chose. Vu stated that he wished to speak and answer any questions that he could, specifically regarding the duffel bag and the money discovered in his vehicle. Vu stated that he was employed as a sandwich maker at a Subway restaurant in New Jersey that was owned by his sister. He claimed that he had been approached earlier the same day by an unidentified white male in Jersey City and instructed to drive to Rhode Island to meet "a guy." The unknown white male provided Vu with a phone number to call when he arrived in Rhode Island [(347) 241-1381.] Vu was told to be in Rhode Island by noon. Vu went to Rhode Island where he drove to a parking lot and called the telephone number. An Asian male instructed Vu to drive to a shopping center. Vu then drove to the parking lot and introduced himself at the parking lot to the Asian male. Vu described the male as 5'4", 120 lbs, 25-30 years old. Vu said that the Asian male took Vu's Pathfinder and left

the area. Vu claimed that he ate lunch at a Subway restaurant and waited for the unknown Asian male to return. Vu claimed that 35 minutes later the Asian male returned with Vu's Pathfinder. The unknown Asian male then left the area. Vu claimed that he could not recall what the unknown male's vehicle looked like. Vu then left in his Pathfinder and began to drive toward New Jersey when he was stopped by the police.

Vu said that he had made one previous trip to Massachusetts under similar circumstances. Vu claimed that during that incident a different Asian male took Vu's vehicle. Vu stated that he could not recall a description of the male nor could Vu recall the male's telephone number, nor the exact location for the meeting. Vu admitted that he was to be paid about $1,000 for the trip on May 11, 2007. He also admitted that because it was "easy money" that he knew that there was probably something illegal about what he was doing. Vu stated that he figured that the Asian male had probably put either drugs or money in Vu's Pathfinder for transport back to New Jersey. Vu also consented to a search of his cell phone. The number (347) 241-1351 was in the call history indicating that it had been called by Vu at 12:15 p.m. that day. It was the only number in the call history on the phone. Vu left in his vehicle after the interview.

## II. ARGUMENT

### A. The Initial Stop Of Vu Was Based Upon Articulable Suspicion And Was Lawful Pursuant To *Terry v. Ohio*.

When the State Police stopped the Defendant on May 11, 2007, collectively law enforcement had ample articulable suspicion. The Supreme Court has long recognized that police must be free to pursue "legitimate investigative function[s]". Terry v. Ohio, 392 U.S. 1, 21 (1968). "A police officer may in appropriate circumstances and in an appropriate manner

approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id. The Supreme Court has also held that these investigatory powers include stopping motor vehicles upon reasonable suspicion. See, e.g., Michigan v. Long, 463 U.S. 1032, 1049 (1983). The two prong test enunciated in Terry requires a determination as to "whether the officer's action was justified at its inception, and whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. "[T]he police officer must be able to point to specific and articulable facts, which taken together with rational inferences form those facts, reasonably warrant the intrusion. United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994)(quoting Terry, 392 U.S. at 21). The second prong requires an examination of the totality of the circumstances, see United States v. Cruz, 156 F.3d 22,26 (1st Cir. 1998), while keeping in mind that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. Terry, 392 U.S. at 23.

Police presence combined with the detention of an individual does not automatically give rise to a finding that an individual has been arrested. See Flowers v. Fiore, 359 F.3d 24 (1st Cir. 2004)(Police Officers' stop of a vehicle, drawing weapons, subsequent handcuffing of suspect, and placement in the back of the cruiser before searching the vehicle did not rise to the level of de facto arrest. The actions were taken for the officer's safety and immediately following no discovery of weapons the suspect was released from the cruiser and the handcuffs were removed.); United States v. Taylor, 162 F.3d 12 (1st Cir. 1998)(Investigatory stop of automobile based on suspicion of drug activity was not converted into a de facto arrest by facts that officers had weapons drawn, there were 10 to 12 officers on the scene, occupants of automobile were

placed face-down on the ground and frisked, egress of automobile was blocked by police cruisers and stop lasted approximately 30 minutes.); United States v. McCarthy, 77 F.3d 522 (1st Cir. 1996)(A 75 minute un-cuffed detention in the cruiser was not considered a de facto arrest.); United States v. Trueber, 238 F.3d 79 (1st Cir. 2001)(An officer's intention to arrest does not factor into whether a legal Terry stop becomes an arrest and thus requires a Miranda warning.); United States v. Acosta-Colon, 157 F.3d 9 (1st Cir. 1998)(The use of handcuffs in the course of an investigatory stop does not automatically convert the encounter into a *de facto* arrest.)

When Vu's vehicle was pulled over, members of law enforcement collectively knew that Vu had been suspected of collecting drug proceeds and that the Defendant had engaged in behavior which corroborated that suspicion, including Vu pulling into a parking lot, placing a call on his cellular telephone, speaking with an individual, and then moving to another parking lot. In that parking lot, the Defendant then met with another male, went inside a restaurant to talk, came out of the restaurant approximately 25 minutes later, and then was handed a duffel bag from a landscaping dump truck with Massachusetts license plates, and which Vu then immediately placed into the back of his own vehicle which had driven from New Jersey and which had New Jersey license plates. The articulable suspicion permitted inquiry of Vu at the time. Based upon the above, there is no question that this quantity and quality of information more than satisfies that necessary for an officer to make a Terry stop. At the stop, the trooper noted the blue duffel bag in the vehicle. The trooper asked where Vu was coming from and Vu provided a false exculpatory statement. Law enforcement knew that Vu had not been to URI at all that day. The trooper asked for and received voluntary consent to search the vehicle. Vu denied knowledge of the duffel bag and its contents. All evidence obtained as a result of this

encounter is admissible.

**B. The Seizure of The Duffel Bag And Its Contents Was Valid Based Upon Vu's Consent To Search.**

Vu voluntarily consented to a search of his vehicle. A consent to search waives any requirement for a search warrant. United States v. Schaefer, 87 F.3d 562, 569 (1st Cir. 1996). The Court need not make a determination of probable cause or exigent circumstances. United States v. Morris, 977 F.2d 677, 688 (1st Cir. 1992). The government must prove that a consent to search was freely and voluntarily given. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983); Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792 (1968); United States v. Rodriguez Perez, 625 F.2d 1021, 1024 (1st Cir. 1980); United States v. Miller, 589 F.2d 1117, 1130 (1st Cir. 1978). Whether the consent was voluntary is a question of fact and depends upon the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 557, 100 S.Ct. 1870, 1879 (1980); United States v. Genao, 281 F.3d 305, 309 (1st Cir. 2002); Rodriguez Perez, 625 F.2d at 1024. Though a failure to give Miranda warnings prior to obtaining a consent to search is a factor to consider in determining voluntariness, in and of itself, it does not vitiate a consent to search. United States v. Alfonso, 759 F.2d 728, 740 (9th Cir. 1985); United States v. Ritter, 752 F.2d 435, 438 (9th Cir. 1985). Nor is custody, alone, sufficient to show that a consent to search resulted from coercion. United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 828 (1976); United States v. Collazo-Aponte, 216 F.3d 163, 187 (1st Cir. 2000); United States v. Barnett, 989 F.2d 546, 555 (1st Cir. 1993); Alfonso, 759 F.2d at 740. Knowledge that a search will inevitably prove incriminating to the defendant does not mean that the consent was the product of coercion and was not voluntary. United States v. Manchester, 711 F.2d 458, 462 (1st

Cir. 1983); United States v. Ciovacco, 518 F.2d 29, 30 (1st Cir. 1975). A written consent is not essential to a finding of a valid consent. Barnett, 989 F.2d at 555. The Constitution does not require proof that a Defendant knows he has a right to refuse consent as a sine qua non of an effective consent to search. However, the failure to advise a defendant that he may withhold consent to a search is a factor to consider on the issue of voluntariness. Mendenhall, 446 U.S. at 558, 100 S.Ct. at 1879; United States v. Laine, 270 F.3d 71, 75 (1st Cir. 2001); United States v. Blais, 98 F.3d 647, 650 (1st Cir. 1996); Barnett, 989 F.2d at 555.

In United States v. Lee, 317 F.3d 26, 30 (1st Cir. 2003), an officer, responding to a suspected credit card fraud, blocked the Defendant's vehicle with his cruiser after the vehicle attempted to escape. The officer drew his gun and ordered his canine to bark. Once the suspects exited the blocked vehicle, the officer silenced the dog and holstered his firearm. Four additional officers arrived at the parking lot to assist the first officer. The Defendant was told that he would be free to leave if everything "turned out." The Defendant eventually consented to a search of the vehicle which contained unauthorized credit cards and goods purchased with those cards. The Court found the consent was voluntarily given.

In United States v. Coraine, 198 F.3d 306, 309-10 (1st Cir. 1999), the Court found that the Defendant voluntarily consented to a search of his mobile home even though the Defendant was under arrest, had been placed in a police department holding cell, and was permitted by the police to take two doses of Xanax within a one-hour period.

In Watson, 423 U.S. at 413, 96 S.Ct. at 822-23, the Defendant’s consent to search his car was upheld even though he had been arrested inside a restaurant, been taken out of the restaurant to the street, been given his Miranda warning, and not advised of his right to refuse to consent to

search. In Blais, 98 F.3d at 648, the Court rejected the defendant's claim that the presence of two police officers and a security guard at the door to his apartment, along with his age of 69 years, resulted in a coerced consent to the search of his apartment. In Barnett, 589 F.2d at 555, the Court found that even if, as defendant had claimed, 7 to 8 police officers with drawn guns were present at the defendant's house, that he was handcuffed, that his Miranda warnings were given, that there was no written consent, and that he was not informed of his right to withhold consent, his consent to search his home was voluntarily given. In United States v. Wilkinson, 926 F.2d 22, 24-25 (1st Cir. 1991), the Court found a valid consent to search where the officers had drawn guns, the defendant was cuffed and frisked, an officer threatened to "tear the place apart," and the defendant had ingested drugs earlier that day. In Alfonso, 759 F.2d at 741, the Court found that consent was voluntarily given even though a number of police officers with drawn guns had initially entered the defendant's hotel room, had arrested him, and had made a security check of the hotel room.

In the instant case, Vu voluntarily gave consent to search his vehicle. No false representations were made to the defendant. No guns were drawn, nor was the Defendant in custody. The Defendant volunteered a false exculpatory statement, claiming that he had been visiting his son at URI, and stated that it was not a problem if the officer searched Vu's vehicle. Vu denied knowledge of the bag and its contents and verbally abandoned ownership of the bag. The seizure of the evidence is valid.

### C. Even If Vu Had Not Consented To A Search Of His Vehicle, A Warrantless Search Of The Vehicle Would Have Been Permissible.

Even if Vu had refused to consent to a search of his vehicle, the search would have been valid. At the time the Defendant was asked if he would permit the police to search his vehicle, probable cause existed to arrest the Defendant. The Supreme Court has upheld warrantless searches of vehicles under circumstances providing ample opportunity to obtain a warrant. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. In addition, the Court has recognized that warrantless searches may be proper even where there is no immediate danger that the car will be removed from the jurisdiction. United States v. Chadwick, 433 U.S. 1, 12, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); South Dakota v. Opperman, 428 U.S. at 367, 96 S.Ct. 3092; Cady v. Dombrowski, 413 U.S. at 441-42, 93 S.Ct. 2523. The automobile exception rests less on the exigency of the specific situation than on "the diminished expectation of privacy which surrounds the automobile." United States v. Chadwick, 433 U.S. at 12, 97 S.Ct. at 2484; See South Dakota v. Opperman, 428 U.S. at 367-69, 96 S.Ct. 3092; Cady v. Dombrowski, 413 U.S. at 441-42, 93 S.Ct. 2523; Cardwell v. Lewis, 417 U.S. at 589-91, 94 S.Ct. 2464. See generally United States v. Moore, 562 F.2d 106, 111-13 (1st Cir. 1977), Cert. denied, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); United States v. Pappas, 600 F2d 300, 304 (1st Cir 1979). In Vu's case, the police were clearly entitled to stop the Defendant. The totality of the facts known to law enforcement at the time, including the trooper's observation of the blue duffel bag, coupled with the Defendant's false statement that he had been visiting his son at URI, and

that he did not have any knowledge of the duffel bag, all provided a basis for a warrantless search, although consent had been given.

**D. The Statements Made By Vu At The State Police Barracks Are Admissible. The Defendant Was Not In Custody.**

*Miranda* rights apply only to individuals who are both in custody and who are interrogated by individuals known to be members of law enforcement. The custody determination is the initial and, generally, the central inquiry. United States v. Ventura, 85 F.3d 708 (1st Cir. 1996). The ultimate inquiry is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Ventura, 85 F.3d at 710, quoting Thompson v. Keohane, 511 U.S. 318 (1995). To make this determination a court must examine all the circumstances surrounding the interrogation. The test is objective, "how a reasonable man in the suspect's shoes would have understood his situation." Id., quoting Stansbury v. California, 511 U.S. 318 (1994). The subjective beliefs of the person being interrogated are not relevant. Ventura, 85 F.3d at 710. Relevant circumstances include "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." In Vu's case, although he was at a police station, there were only two agents from ICE talking to him, both were in civilian clothing, no weapons were visible, the Defendant was not in handcuffs, nor in a closed room. The Defendant's movements were not restrained in any manner. Vu was told several times that he was not under arrest and that he was free to leave at any time. Vu voluntarily stated that he

wished to speak to the agents. Therefore, all of his statements are admissible.

## III. CONCLUSION

For all of the foregoing reasons, Defendant's motion to suppress should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY ROGERS
MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

CERTIFICATION OF SERVICE

On this 28th day of February, 2008, I caused the Government's Objection to the Defendant's Motion to Suppress Evidence and Memorandum in Support of said Objection to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Walter H. Underhill, Esq.
66 Long wharf, 4th Floor
Boston, MA 02110

William C. Dimitri, Esq.
462 Broadway
Providence, RI 02909

/s/ MARY ROGERS
MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov